IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN PACHECO, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.:** 4:18-cv-955 |
| | § | |
| UNITED AIRLINES, | § | **JURY DEMANDED** |
| *Defendant.* | § | |
| | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES, Plaintiff John Pacheco in the above-styled and numbered cause and files this his Plaintiff's Original Complaint against Defendant United Airlines respectfully showing to the Honorable Court as follows:

**I.
PARTIES**

1. Plaintiff John Pacheco is a current employee of Defendant United Airlines. Plaintiff is a citizen of the United States and the State of Texas and currently resides in Englewood, Colorado.

2. Defendant United Airlines is a foreign non-profit corporation authorized to conduct business in the State of Texas. Defendant may be served with process by serving its registered agent, CT Corporation System at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

**II.
JURISDICTION**

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§

2000e-2(a) and 2000e-3(a); the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; and the Age Discrimination in Employment Act of 1967, 29 U.S.C § 623.

4.      Additionally, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state claims arising under § 21.051 and § 21.055 of the Texas Labor Code because such claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

5.      Moreover, venue is proper in the U.S. Southern District of Texas–Houston Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claim occurred.

### III.
### NATURE OF THE ACTION

6.      This is an action brought pursuant to Title VII of the Civil Rights Act of 1866, the Civil Rights Act of 1866, as amended, and the Texas Labor Code on the ground that Plaintiff was discriminated against because of his race (Hispanic) and retaliated against after engaging in protected activities.

7.      This is also an action brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, and the Texas Labor Code on the grounds that Plaintiff was discriminated against because of his age (53) and retaliated against after engaging in protected activities.

### IV.
### EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On May 26, 2016, Plaintiff filed his dual Charge of Discrimination (Charge No. 460-2016-00321) with the U.S. Equal Employment Opportunity Commission and the Texas Workforce Commission – Civil Rights Division against Defendant alleging race (Hispanic) discrimination, age (53) discrimination, and retaliation. See Ex. 1.

9. Subsequently, on December 27, 2017, the EEOC issued Plaintiff his Notice of Right Sue. See Ex. 2. Plaintiff files this lawsuit within ninety (90) days of receiving his Notice of Right to Sue notice from the EEOC. Therefore, Plainitff's lawsuit is timely filed.

## V.
## FACTS

10. Plaintiff is a fifty-three (53) year old (DOB: 11/19/1964) Hispanic male.

11. Plaintiff has been an employee of United for nearly thirty (30) years—from December 11, 1986, to the present.

12. Starting in December 2012, Plaintiff began having employment issues with his supervisor Mr. Kevin Ross (Caucasian, around 43 years old), the Managing Director of Charters.

13. At that time, Mr. Ross began making discriminatory remarks about several of Plaintiff's homosexual coworkers. Because Plaintiff's sister is also homosexual, Plaintiff found these comments especially offensive.

14. In 2013, Plaintiff began personally experiencing race and age discrimination by Mr. Ross.

15. Since that date, until Plaintiff was forced to take another position within United in 2017, as evidenced below, Mr. Ross created a hostile work environment for Plaintiff based on his race and age, as well as for many of Plaintiff's minority co-workers.

16. On July 22, 2013, Mr. Ross asked Plaintiff who was a "large black woman" on his Facebook page.

17. In September 2013, Plaintiff heard rumors of layoffs or a Reduction in Force (RIF). Plaintiff then informed Mr. Ross about the layoffs. In response, Mr. Ross said, "We need to get rid of Gary Schneider – he is *too old* and *we have to quit him*. I'll call Dave Hilfman." As a result

3

*Plaintiff's Original Complaint*

of these interactions, Plaintiff was concerned about his employment with United given his age and race.

18.     On February 11, 2014, Plaintiff was at lunch with Mr. Ross, Scott Summerville, and Joe Williams. At lunch, the discussion revolved around Inflight Coordinator Assignments, when Mr. Ross said in regards to employee, Alonzo Hutchinson, "he is black and gay."

19.     Mr. Ross then jokingly asked if anyone was "wearing a wire," indicating that he was aware such comments were prohibited. Mr. Ross further stated that he could not afford any more "drama" from employees since that would "probably be it," insinuating his own termination of employment.

20.     Mr. Ross could not afford any more issues at work because he had had negative experiences with three (3) former employees: Keith O'Hira (retired due to a hostile work environment caused by Mr. Ross); and Mary Jones and Sylvia Menias, who left the company after being targeted by Mr. Ross.

21.     On October 28, 2014, Plaintiff was experiencing knee discomfort, which caused him to walk awkwardly. Mr. Ross noticed and joked about Plaintiff's condition—calling Plaintiff "*old*." This "old" comment caused great concern for Plaintiff, knowing that Mr. Ross had recently fired Gary Schneider, who Mr. Ross had also thought of as "old."

22.     On December 18, 2014, Plaintiff attended United's holiday party. While at the party, Mr. Ross accused Plaintiff of having sexual relations with another employee, Sylvia Menias, who had also had issues with Mr. Ross. Plaintiff denied the allegations and told Mr. Ross that he did not like him continually encouraging Plaintiff to "hook up" with coworkers. This incident became tense and Mr. Ross threatened to fire Plaintiff.

23. On or about January 5, 2015, after Mr. Ross had been diagnosed with throat cancer, Mr. Ross told Plaintiff that he "should have been the one that got the throat cancer instead of [him], since Plaintiff was old, single, and had probably eaten more p***y than [Mr. Ross], who is younger and married.

24. On March 3, 2015, Plaintiff had a merit review with Director, Michael O'Brien. Mr. O'Brien was filling in for Mr. Ross, as he was being treated for cancer. At the merit review, Mr. O' Brien issued Plaintiff only a 1.5% merit increase, since he claimed Plaintiff's salary was already too high that United could not provide a further increase. Notably, anything less than 1.5% increase is considered an "under performer," but Mr. O'Brien assured Plaintiff that he was "doing a great job."

25. There was simply no justification for the minimal raise Plaintiff received; United's actions were the result of Plaintiff's previous complaints of race and age discrimination to Human Resources against Mr. Ross.

26. On June 16, 2015, Plaintiff attended a doctor's appointment. At the staff meeting, Mr. Ross made a reference to Plaintiff claiming "it's like that scene in the movie "Broke Back Mountain," where he says, 'I just can't quit that guy.'"

27. On June 21, 2015, Plaintiff called Kate Gebo, VP of Real Estate, and shared his concerns of discrimination based on age and race. At this point, Ms. Gebo said, "due to the nature of our conversation," she would "have to report it immediately." She indicated that Garrison Phillips, Associate General Counsel, would take care of it.

28. The following day, June 22, 2015, Plaintiff called Mr. Phillips and exchanged emails. On July 3, 2015, Plaintiff sent Mr. Phillips an email with his protected complaint, which included

5

*Plaintiff's Original Complaint*

the timeline of events, which he requested. Mr. Phillips acknowledged receipt of the protected complaint on July 6, 2015.

29. On July 13, 2015, while driving back after lunch, Mr. Ross stated to Plaintiff, "*I'm a racist and everyone knows it*"—followed by Joe Lex stating, *"We're all racist."*

30. On July 15, 2015, Plaintiff asked his immediate supervisor, Mr. O' Brien, to meet after work to discuss concerns he had with Mr. Ross. Plaintiff communicated to Mr. O'Brien that he felt discriminated against due to his age and race by Mr. Ross. Mr. O' Brien acknowledged this and said "we need to work on getting the target sights that Kevin Ross has on [Plaintiff] moved somewhere else."

31. Plaintiff had also complained to Mr. O'Brien in the previous years—as early as 2013, but Mr. O'Brien never reported these instances to United's Human Resources.

32. In August 2015, at lunch with the "Lunch Bunch/Good Ol' Boys Club" at Buffalo Wild Wings, Mr. Ross pulled up Plaintiff's Facebook page to show the guys Ms. Massa in a bikini. Mr. Ross enlarged and zoomed in on the picture to show Ms. Massa's breasts and said that they were "obviously old breast implants because of the way they sagged." Plaintiff was offended, and shortly after this event, deactivated his Facebook account.

33. On September 15, 2015, Mr. Phillips sent Plaintiff an email with an update, indicating that he still had more people to speak with and that he would get back to Plaintiff. Plaintiff made Mr. Phillips aware that Mr. Ross was aware of the Human Resources complaint and that Mr. Ross was on a 'hunt' to track down the culprit by conducting individual closed door meetings with the staff.

34. On October 6, 2015, Plaintiff complained to Human Resources that he felt like a "man on an island," given Mr. Ross talking to everyone about his complaint of race and age discrimination.

35. On October 20, 2015, United's Vice President Brian Znotins visited the office and met with Mr. Ross, behind closed doors. As Mr. Znotins left Mr. Ross's office, he appeared 'fired up' and told Plaintiff, "I need to talk to you when you get a chance."

36. In response, Plaintiff walked to a private room with Mr. Znotins, and he basically said, "Kevin Ross is not the problem." In an attempt to clear any confusion, Plaintiff asked Mr. Znotins, if he was aware of the details reported to Mr. Phillips. Mr. Znotins responded, "Garrison [Phillips] has a plan, but it's not my plan and Kevin Ross is not going anywhere."

37. Following this interaction, Plaintiff sent an email informing Mr. Phillips of the encounter regarding his protected complaint. Mr. Phillips failed to acknowledge this email, after acknowledging the previous emails.

38. On November 19, 2015, Joe Williams took Plaintiff to a birthday lunch. While at lunch, Mr. Williams informed Plaintiff of a recent conversation he had with Mr. Ross. In the conversation, Mr. William revealed that Mr. Ross said the relationship between Plaintiff and himself [Mr. Ross] was "obviously broken" and that he could still get rid of [Plaintiff], but he needed to have a RIF to do it, as he had previously done with Sylvia Menias and Gary Scneider.

39. On January 6, 2016, Plaintiff was angrily confronted by Joe Williams about the legal hold put on his computer/e-mail as a result of Plaintiff's complaints. Mr. Williams was so upset that Plaintiff felt he might have to physically defend himself. Plaintiff reported this incident to his immediate supervisor, Mr. O'Brien.

40. After Plaintiff filed his EEOC Charge of Discrimination in May 2016, Mr. Ross and Mr. Lex continually retaliated against him.

41. On December 9, 2016, Plaintiff sent and email to Mr. O'Brian stating that Mr. Ross and Mr. Lex continually did not include him on email conversations with Plaintiff's customers in an effort to sabotage Plaintiff's mid-year evaluation and set him up for failure. Plaintiff believed Mr. Ross and Mr. Lex's actions were to justify his eventual termination.

42. On January 9, 2017, Plaintiff complained to Laura King regarding information he obtained from a co-worker, who stated that Mr. Ross had said over a co-workers lunch that they should all gang up at Plaintiff during a paintball event and "shoot him" with a "real gun." This incident made Plaintiff fear for his physical safety.

43. On August 23, 2017, Plaintiff emailed Zacharia Ramsen to follow-up on a conversation they had the previous week. Plaintiff told Mr. Ramsen that he felt he was being treated differently than his co-workers by Mr. Ross regarding sick leave and attendance. Specifically, Plaintiff informed Mr. Ramsen that Mr. Ross had forced him to request Family Medical Leave Act "FMLA" leave when Plaintiff was absent for five days but allowed his co-workers to work from home when sick without charges to their sick leave.

44. In October 2017, Plaintiff was forced to accept a lower paying position at United and relocate to Denver, Colorado in order to escape the discrimination and retaliation he had to endure from Mr. Ross for years. Plaintiff's new position resulted in a salary reduction of approximately twenty thousand ($20,000.00) dollars a year.

//

//

//

*Plaintiff's Original Complaint*

# VI.
# CAUSES OF ACTION

### COUNT 1, 2, and 3: RACE DISCRIMINATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e-2(a); THE CIVIL RIGHTS ACT OF 1866, AS AMENDED, 42 U.S.C. § 1981; AND § 21.051 OF THE TEXAS LABOR CODE

45. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

46. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his race (Hispanic).

47. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and § 21.051 of the Texas Labor Code.

### COUNT 4 and 5: AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, AS AMENDED, 29 U.S.C. § 623, AND § 21.051 OF THE TEXAS LABOR CODE

48. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

49. Defendant intentionally engaged in unlawful discriminatory practices against Plaintiff because of his age (53).

50. Defendant discriminated against Plaintiff in connection with the making, performance, modification, and termination, and the enjoyment of all benefits, privileges, terms, and conditions of the employment relationship because of his age (53) in violation of the Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623, and § 21.051 of the Texas Labor Code.

**COUNT 6, 7, 8, and 9: RETALIATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e-3(a); THE CIVIL RIGHTS ACT OF 1866, AS AMENDED, 42 U.S.C. § 1981; THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, AS AMENDED, 29 U.S.C. § 623; AND § 21.055 OF THE TEXAS LABOR CODE**

51. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein

52. Further, Defendant retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(d), and § 21.055 of the Texas Labor Code after Plaintiff made a protected complaint of race (Hispanic) and age (53) discrimination to Defendant.

## VII.
## JURY DEMAND

53. Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff submits the jury demand and herein submits the jury fee.

## VIII.
## PRAYER

54. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for the following:

    a. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or any amendments thereto, including but not limited to back

       pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

b.    Compensatory damages, including, but not limited to, emotional distress;

c.    Past, present, and future physical pain and mental suffering;

d.    Punitive damages;

e.    Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

f.    Pre-judgment interest at the highest rate permitted by law;

g.    Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h.    Costs of Court; and

i.    Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

Respectfully submitted,



_____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
Southern District I.D. 713316
2603 Augusta Dr., 14th Floor
Houston, Texas 77057
Main: (713) 742-0900
Fax: (713) 742-0951
alfonso.kennard@kennardlaw.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

11

*Plaintiff's Original Complaint*



/s/ *Jose E. Galvan*
José E. Galvan
Texas Bar No. 24083039
S.D. ID. 2200705
2603 Augusta Dr., 14th Floor
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
jose.galvan@kennardlaw.com

**OF COUNSEL FOR PLAINTIFF**

12

*Plaintiff's Original Complaint*